UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Alvin J. Hotard                                               Civil Action No. 07-1476

versus                                                        Judge Tucker L. Melançon

Devon Energy Corporation, L.P.                                Magistrate Judge C. Michael Hill

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment on Behalf of Devon Energy Production Company, L.P. ("Devon") [Rec. Doc. 8], plaintiff, Alvin J. Hotard's, opposition thereto [Rec. Doc. 15] and Devon's reply to plaintiff's opposition [Rec. Doc. 16]. For the following reasons, Devon's motion will be granted.

*I. Background*

Plaintiff, Alvin J. Hotard, was employed by Wood Group Production Services ("Wood Group") as a mechanic in 2002. *R. 15-2, Plaintiff's Affidavit, no.2.* Wood Group is in the business of supplying laborers such as plaintiff for work in the oilfield industry. *R. 8-2, Devon's Stmt. Of Uncontested Material Facts.* On August 7, 2005, plaintiff was transferred to work for Devon on Devon's Platform, SMI-128-B, on the Outer Continental Shelf in South Marsh Island. *Id.; R. 15-2 at no. 4.* Devon furnished plaintiff's transportation from the shore to the platform and provided plaintiff's meals and lodging while on the platform. *R. 8-2, Devon's Stmt. Of Uncontested Material Facts.* Devon supplied all the tools and parts necessary for plaintiff to perform his work. *Id.* Plaintiff brought his own steel toed shoes, hard hat, and safety glasses for the work. *R. 15-2 at no. 10.*

Throughout his work on Devon's platform, plaintiff was paid an hourly wage rate

by Wood Group every two weeks. *R. 15-2, no. 5.* Plaintiff was the only mechanic, both for Wood Group and Devon doing the type of work he specialized in on the Devon platform. *Id. at no. 8.* The detailed manner and method of performing plaintiff's work was under his personal control. *Id. at no. 9.* Plaintiff followed the safety policies of Wood Group, *Id. at no. 12,* and was given safety instructions while on the platform by Devon employees, *R. 8-4, p.32, ln. 9-25.* At no time did any employee of Devon instruct plaintiff on how to perform his craft as a mechanic. *R. 15-2, no. 13.* Devon had the right to remove plaintiff from its platform; however, Devon did not have the authority to terminate plaintiff's employment with Wood Group. *Id. at no. 14.*

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that

there is a genuine issue for trial.[1] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir.1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Analysis

At issue in the motion *sub judice* is whether Devon is the borrowing employer of plaintiff and whether plaintiff was in the course and scope of his employment with Devon at the time of his alleged injury.

### A. Borrowed Employee Status

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.*

Generally, the question of borrowed employee status is a question of law for the court to determine. *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993). In some cases, however, factual disputes must be resolved before the district court can make a legal determination. *Id.* (citing *Brown v. Union Oil Co. of California*, 984 F.2d 674, 679 (5th Cir. 1993) and *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 n. 13 (5th Cir. 1988), *reh'g granted on other grounds*, 841 F.2d 572 (5th Cir. 1988)). In its motion for summary judgment, Devon contends that no genuine issue of material fact exists as to Hotard's status as Devon's borrowed employee at the time of the alleged incident and summary judgment is therefore appropriate.

In support of its position, Devon points to the nine factor test identified by the Fifth Circuit in *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir. 1969), as a guide for determining borrowed employee status in the context of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). To determine borrowed employee status, the following nine factors must be considered:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Brown v. Union Oil Co. of California*, 984 F.2d 674, 676 (5th Cir. 1993)(citing *Ruiz,* 413 F.2d 310).

While the Fifth Circuit has held that no single *Ruiz* factor is determinative, when the LHWCA is used as a defense to tort liability, the principal focus within the *Ruiz* test is: "(1) was the second employer itself responsible for the working conditions experienced by the employee, and the risks inherent therein, and (2) was the employment with the new employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced thereto[.]" *Gaudet v. Exxon Corp.*, 562 F.2d 351, 357 (5th Cir. 1977); *See Also Billizon*, 993 F.2d at 106; *Brown*, 984 F.2d at 676; *Melancon*, 834 F.2d at 1245.[2]  These factors are considered the most important when the borrowed employee doctrine is used as a defense to tort liability because they deal with the question of whether the circumstances of the employee's employment are such that the defendant "should be considered an employer and not a third party under the LHWCA." *Gaudet*, 562 F.2d at 357.  With this focus in mind*,* if, after considering each of the *Ruiz* factors, ". . . sufficient basic factual ingredients are undisputed, the court may grant summary judgment." *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 617 (5th Cir. 1986).

### 1. Control

Devon contends that it had control over Hotard and the work he was performing. It is undisputed that David Hargrave, a Devon supervisor/employee, supervised Hotard

---

[2] In other cases, the first factor, control, has been considered the central, though not solely determinative, issue of borrowed employee status. *Melancon*, 834 F.2d at 1245; *see also Hebron v. Union Oil Co. of California*, 634 F.2d 245 (5th Cir. 1981).  In either event, the Court will examine each of the *Ruiz* factors in this case and make its determination based on the totality of the circumstances.

on the platform. *R. 15-2, no. 16*. In support of its position, Devon cites Hotard's own deposition testimony which states that David Hargrave was "always" the supervisor that Hotard reported to on the platform. *Plaintiff's Depo., pp. 29-30*. In his deposition testimony Hotard stated that he was given a "walk through" of the duties he would perform first by a Devon mechanic and then by Hargrave. *Id. at p. 30, ln. 20-25; p. 31, ln. 1-16*. Hotard further testified that once he was on the Devon platform, he did not have any contact with the Wood Group office during his seven-day hitch. *Id. at p. 35, ln. 4-8*.

Hotard argues that Devon did not have complete control of his work performed on the platform and that his work was ultimately controlled by Wood Group. Hotard's argument is based on his own self-serving, unsubstantiated assertions contained in an affidavit that was submitted after depositions were taken and then only in response to Devon's Motion for Summary Judgment.[3] *R. 15-1, Hotard Aff; R. 15-2, Plaintiff's Stmt of Uncontested Facts*. In the affidavit plaintiff alleges, without supporting evidence: (1) "[a]t all times the detailed manner and method of performing his work was under his personal control and if he did not know now to fix a problem, he contacted a superior from Wood Group, not anyone with Devon Entergy [sic], for advice," *Id. at no. 9*; (2) Wood Group did not "relinquish supervisory control over affiant's work on the platform," *Id. at no. 11* and (3) "Horgrave [sic] was strictly in charge of the everyday workings of the platform and not Affiant's job tasks, i.e. Affiant's mechanical procedures," *Id. at no. 16*.

---

[3] "[S]elf-serving allegations are not the type of 'significant probative evidence' required to defeat summary judgment." *U.S. v. Lawrence, 276 F.3d 193, 197 (5th Cir. 2001)*.

To the contrary, plaintiff's deposition testimony, as cited in the foregoing, states that Hargrave gave him a "walk through" of the duties he was to perform, that Hargrave was the supervisor Hotard reported to on the platform and that he did not have contact with Wood Group during his seven-day hitch.

Based on the record before the Court, Devon has established that it had control over plaintiff's work in that Devon assigned all his duties, including what work to do, when to do it and where it was to be done. *Melancon v. Amoco Prod. Co.*, 834 F.2d at 1245("Amoco clearly had control over Melancon and his work: Melancon took orders only from Amoco personnel who told him what work to do, and when and where to do it"); *See also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir.2005) (a party's "... attempt to create a fact issue as to his knowledge by relying on a conclusory and self-serving affidavit is on unsteady ground."). Considering the undisputed evidence submitted by the parties, in the light most favorable to the plaintiff, the Court finds that the control factor weighs in favor of borrowed employee status in this case.

### 2. Work Performed

The work being performed by Hotard at the time of the accident was the work of Devon. Plaintiff's mechanical work was done to benefit Devon's operations. Thus, this factor for borrowed servant status is met.

### 3. Meeting of the Minds

The record contains a Wood Group "Personnel Action Form" which indicates that Hotard was scheduled for "7 & 7" as a "senior mechanic" to Devon - SMI/28, effective August 7, 2005 at a rate of 22.00 per hour. *R. 8-4, Exh. B*. It is undisputed that at the end of a hitch, plaintiff filled out a time ticket for the number of hours he worked and

7

Devon then issued a purchase order or work order which was sent to Wood Group. The purchase order or work order was for a higher hourly rate than what Wood Group actually paid plaintiff. *R. 8-4, Exh. A, p. 34, ln. 1- p. 35, ln. 3.*

While the record does not include an actual agreement between Devon and Wood Group, the evidence before the Court indicates that Devon controlled the work performed by Hotard. Plaintiff admitted that he regarded Hargrave, a Devon employee, as his supervisor on the platform. *R. 8-4, Exh. A, pp. 29-30.* Hotard also admitted that he took instructions from Devon employees, including Hargrave, who assigned what he worked on and when and where he performed his work. *Id. pp. 30-35.* The realities of the work site and the parties' actions demonstrate that an agreement existed between Devon and Wood Group and this factor favors borrowed employee status.

### 4. Acquiescence to New Work Situation

"The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them." *Brown*, 984 F.2d at 678. It is undisputed that Hotard worked solely for Devon for over eleven months, from August 7, 2005 through July 29, 2006. *R. 8-4, Exh. B; R. 8-4, Exh. A, p. 26, ln. 18-23*. Even "one month is a sufficient amount of time for [the borrowed employee] to appreciate the new work condition." *Brown,* 984 F.2d at 678. Moreover, Hotard stated that he requested the transfer to Devon so that he could work seven-day hitches as opposed to the fourteen-day hitches he was previously working for another company. *(R. 8-4, Exh. A, pp. 24 - 26).* Thus, the evidence is sufficient to demonstrate that Hotard acquiesced to the work conditions at Devon's Platform, SMI-128-B.

### 5. Termination of Original Employment Relationship

The record clearly reflects, and Devon's deposition testimony confirms that Devon's supervisors were on the platform performing tasks related to work performed by Wood Group employees, including daily time sheets. Hotard testified that he had no contact with Wood Group while he was on the platform. Hotard, however, continued to receive his pay check from Wood Group who retained the ultimate right to terminate Hotard altogether. *(R. 8-4, Exh. A, pp. 34-35; R. 15-2, no. 14).* "When considering this factor, [the Fifth Circuit] emphasizes the lending employer's relationship with the employee while the borrowing occurs." *Brown,* 984 F.2d at 678. "This factor does not require a lending employer to sever completely its relationship with the employee, because such a requirement would effectively eliminate the 'borrowed employee' doctrine." *Melancon*, 834 F.2d at 1246. Although Wood Group did not relinquished all control over Hotard while he was working at Devon's Platform, this fifth factor weighs in favor of borrowed employee status. *Id.*

### 6. Tools and Place for Performance

It is undisputed that Devon furnished the work place and most of the tools utilized by Hotard in the performance of his work. *(R. 8-2, Devon's Stmt. Of Uncontested Material Facts; R. 15-2, no. 10).*

### 7. Length of New Employment

"Where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee." *Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 618 (5th Cir. 1986). In the case at bar, Hotard worked on Devon's Platform, SMI-128-B for over eleven months, almost a year. As such, this factor weighs in favor of finding for borrowed employee status. *See U.S. Fire Ins. Co. v. Miller*, 381 F.3d 385,

390 (5th Cir. 2004).

### 8. *Right to Discharge*

If the borrowing employer has the right to terminate the borrowed employee's services with the borrowing employer, the right to discharge factor is satisfied even though the borrowing employer does not have the right to terminate the borrowed employee's position with the nominal employer. *Melancon*, 834 F.2d at 1246. The evidence supports that Devon could terminate Hotard's employment at its Platform 128-B. *(R. 8-2, Exh. A, p. 39, ln 1-13; p. 67, ln 23-25; p. 68, ln. 1-25).* As such, the right to discharge factor is satisfied.

### 9. *Obligation to Pay*

The determining factor in who had the obligation to pay the borrowed employee is who furnished the funds from which the borrowed employee was paid. *Melancon,* 834 F.2d at 1246(citing *Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d at 618). Where the nominal employer bills the borrowing employer for the services the borrowed employee provides, the obligation to pay requirement is met. *Id.* The fact that the nominal employer keeps a percentage of the amount charged the borrowing employer is not relevant. *Id.*

The record indicates that Wood Group issued a check to Hotard based on daily time sheets filled out and approved by Devon supervisors. *(R. 58, Exh. 3).* Wood Group would bill Devon based on the hours worked by Hotard. Since Devon paid Wood Group at an hourly rate for Hotard's work, and then Wood Group paid Hotard at a lower hourly rate, Devon in essence paid Hotard. *See Capps v. N.L. Baroid-NL Industries, Inc.*, 784 F.2d 615, 618 (5th Cir. 1986). Accordingly, these facts indicate that Devon had the

**10**

legal obligation to pay Hotard.

Based on the foregoing analysis, the Court finds that Devon has established an absence of genuine issues of material fact related to whether or not it was the borrowed employer of Hotard. In considering the factors for determining borrowed servant status set forth above, all factors are met or at least favor borrowed employee status.

### B. Course and Scope of Employment

Plaintiff argues that, even if he is considered Devon's borrowed employee, he was not in the course and scope of his employment at the time of the alleged incident and, as such, neither the Longshore Harbor Worker's Compensation Act ("LHWCA") nor the Louisiana Worker's Compensation Act ("LWCA") applies. In particular, plaintiff argues that at the time of the alleged injury, when he was bitten by a spider, he was not in the course and scope of his employment as he was sleeping and was not furthering his employer's needs. Plaintiff cites cases under the LWCA and the doctrine of *respondeat superior*. It is undisputed that the alleged incident occurred on Devon's Platform 128-B located on the Outer-Continental Shelf at South Marsh Island. Since plaintiff was a non-seaman worker injured on an Outer Continental Shelf Lands Act ("OCSLA") situs, these theories of recovery have no application in this case. Moreover, the cases cited are factually distinguishable from this case in that the injured plaintiffs were not required to live on the work site.

To establish entitlement to benefits, a LHWCA claimant bears the burden of proving that his injury "[arose] out of and in the course of [his] employment." 33 U.S.C. § 902(2); *Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267 (1994). This standard "is not confined by common law conceptions of scope of

**11**

employment." *O'Leary v. Brown-Pacific-Maxon*, 340 U.S. 504, 506 (1951). For example, an employee need not establish a causal relationship between his employment and the accident that occasioned his injury. *Id*. at 506-07. "Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer." Id. at 507. Rather, "all that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." *Id*. Thus, contrary to plaintiff's argument, his coverage under the LHWCA does not depend on a causal connection between his employment as a mechanic on the Devon platform and the alleged injury, that is, being bitten by a spider. Nor does LHWCA coverage depend on a finding that plaintiff was engaged in an activity that benefited his employer when the alleged incident occurred. Rather, all that is required is that plaintiff's obligations or conditions of his employment created the zone of special danger in which the injury arose. *Id.*

Here, plaintiff's employment required that he travel to Devon's platform to work and that he was required to stay for the duration of his hitch. As plaintiff was required to sleep in the quarters located on the platform, it was an incident of his employment by Devon and he would not have been there were it not for his employment. Plaintiff's injury "[arose] out of and in the course of [his] employment," and is therefore under the purview of the LHWCA. 33 U.S.C. § 902(2).

## *IV. Conclusion*

The Court finds that Hotard was in the course and scope of his employment under the LHWCA at the time of the alleged incident forming the basis of this law suit. The Court further finds that the application of the pertinent law, including the *Ruiz* factors,

to the undisputed facts of this case dictates that Devon's Motion For Summary Judgment be granted.